UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO: 5:08-CV-23-R

MORSEY CONSTRUCTORS, LLC                                          PLAINTIFF

v.

BURNS AND ROE ENTERPRISES,
INC. and URANIUM DISPOSITION
SERVICES, LLC                                                    DEFENDANTS

## MEMORANDUM OPINION

This matter is before the Court upon the Defendants' Motion to Compel Arbitration (Docket #6).  The Plaintiff responded (Docket #8), the Defendants replied (Docket #13), and the Plaintiff filed a surreply (Docket #25).  This matter is ripe for adjudication.  For the following reasons, the Defendants' Motion is **GRANTED**.

## BACKGROUND

In 2002, the U.S. Department of Energy awarded a prime contract to the Defendant Uranium Disposition Services, LCC ("UDS") for the "DUF 6 Conversion Project."  Pursuant to this contract, UDS agreed to design, construct, and operate two uranium conversion facilities.  One of the conversion facilities is located in Paducah, Kentucky.  UDS subcontracted certain work on this project to one of its member companies, Defendant Burns and Roe Enterprises, Inc. ("BREI").  On May 16, 2005, and February 24, 2006, BREI and Plaintiff Morsey Constructors, LLC ("Morsey") entered into two subcontracts for the design, fabrication, and installation of a pre-cast concrete structure for the project as well as certain building and equipment foundations.  The May 16 subcontract, Contract No. P25545-C-S021, was in the amount of $4,723,310, and the February 24 subcontract, Contract No. E11286-C-S039, was in the amount of $2,675,000.

On December 21, 2007, Morsey filed suit against the Defendants in McCracken Circuit Court, and the action was removed to this Court on February 8, 2008.  Morsey alleges that during the performance of its subcontracts, BREI, upon the knowledge and consent of UDS, directed Morsey to provide substantial additional, changed work that hindered Morsey's performance.  Morsey alleges that due to these "Cumulative Impacts," it incurred significantly increased costs for which it has not been compensated.  Morsey has alleged claims for Abandonment/Cardinal Change (Count I), Breach of Contract-BREI (Count II), Breach of Warranties-BREI (Count III), Unjust Enrichment-BREI and UDS (Count IV), and Quantum Meruit-BREI and UDS (Count V).

The Defendants have filed a Motion to Compel Arbitration, alleging that the "Disputes" clause contained in Article XIV of both subcontracts contemplated binding arbitration of disputes in cases where either party exercises its right to arbitration, with no resort to the courts. The Defendants allege that they have elected to invoke the Disputes clause, and have so notified Morsey, yet Morsey has refused to dismiss this matter voluntarily and arbitrate, necessitating this Motion.  Morsey maintains that the Dispute clause does not mandate arbitration of all of the claims it asserts in this action.

## DISCUSSION

Generally, "courts should enforce private agreements to resolve disputes by mandatory binding arbitration and any ambiguities or doubts should be resolved in favor of arbitration." *Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  This principle has been codified in the Federal Arbitration Act (FAA) which provides, in part:

2

> A written provision in...a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Section 4 of the FAA gives the Court the authority to issue "an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  The FFA "'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or [a]...defense to arbitrability.'"  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24-25 (1983)).  Similarly, under the Kentucky Uniform Arbitration Act, an arbitration agreement "is valid, enforceable and irrevocable, save upon such grounds as exist at law for the revocation of any contract," KRS § 417.050, and the Court may order the parties to arbitrate if finds the existence of a valid and enforceable agreement, KRS § 417.060.

However, "no matter how strong the federal policy favors arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.'"  *Simon v. Pfizer Inc*., 398 F.3d 765, 775 (6th Cir. 2005) (quoting *United Steelworkers, Local No. 1617 v. Gen. Fireproofing Co.*, 464 F.2d 726, 729 (6th Cir. 1972)).  Before the Court compels an unwilling party like Morsey to arbitrate, it must first determine whether the dispute is arbitrable by finding whether a "'valid agreement to arbitrate exists between the parties'" and whether the dispute at issue "'falls within the substantive scope of that agreement.'"  *Bratt Enters. v. Noble Int'l Ltd.*, 338 F.3d 609, 612

3

(6th Cir. Ohio 2003) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir.

2003)).  The parties do not dispute that a valid arbitration agreement exists in the form of Article

XIV.  *Id.*

The Disputes clause in the subcontracts at issue here states:

**ARTICLE XIV – DISPUTES**

In the event a dispute arises between Purchaser [BREI] and Contractor [Morsey]
regarding any matter hereunder, each Party agrees to refer the matter to a senior
executive of its respective corporation.  Said executives shall meet, and attempt to
negotiate a good faith resolution of the dispute.  Should the executives be unable to
obtain a resolution within thirty (30) days after commencement of negotiation, either
Party may then, by notice to the other, submit the dispute to the American Arbitration
Association for resolution under its rules then in effect.

In no event shall the arbitrator(s) have jurisdiction to consider (i) claims for
consequential          damages or damages beyond the limitation of liability contained in this
                       Agreement or (ii) any challenge to the limitation of liability contained in
                       this Agreement.  The decision of the arbitrator(s) shall be final and
                       binding upon the parties without the right of appeal to the courts. The
                       prevailing Party shall be entitled to reimbursement of its expenses,
                       including reasonably attorneys' fees.  Pending final resolution of any
                       dispute, Purchaser and Contractor shall continue to fulfill their respective
                       obligations hereunder.

Per this article, the senior executives of the parties have met, but were unable to resolve

the dispute successfully.  The parties disagree as to whether all of Morsey's claims fall within

the substantive scope of the arbitration agreement.  *Id.*

Morsey does concede that the Disputes clause mandates arbitration of its claims for direct

damages against BREI under the subcontracts.[1]  However, Morsey maintains that the arbitration

---

[1]The Defendants argued in their Motion to Compel Arbitration that the use of the word
"may" in the last sentence of the first paragraph of the Disputes clause does not make arbitration
optional.  *Detroit Edison Co. v. Burlington N. & Santa Fe Ry. Co.*, 442 F. Supp. 2d 387, 390 (
E.D. Mich. 2006) (citing courts that have found that the use of the word "may" does not make
arbitration optional).  As the Plaintiff has conceded that it is *required* to arbitrate at least some of

clause is a "limited" one and that it is not contractually obligated to arbitrate either its claims against UDS, its claims against BREI for consequential damages, or its claims against BREI for damages that go beyond the limitations of liability in the subcontracts.  In response, the Defendants argue that the clause is not "limited," but instead extends to *any* dispute relating in *any* way to the contractual relationship formed by the subcontracts.  The Defendants also argue that by invoking the American Arbitration Association (AAA) rules in the Disputes clause, the parties agreed that question of arbitrability itself would be decided by an arbitrator instead of the Court.

**1.  Scope of the Arbitration Clause**

The parties agree that there is a valid arbitration clause in Article XIV of the subcontracts that binds them, but disagree as to the degree with which they are bound.  Therefore, the Court must determine whether Morsey's claims against UDS, its claims against BREI for consequential damages, and its claims against BREI for damages that go beyond the limitations of liability "fall[] within the substantive scope" of the Disputes clause.  *Bratt Enters.*, 338 F.3d at 612. However, the Court may not determine the scope issue if the parties have "clearly and unmistakably" delegated the issue of "scope" to an arbitrator.  *AT&T Techs. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").  The Defendants maintain that the parties agreed to "arbitrate arbitrability," a claim which Morsey refutes.

The Disputes clause does not "clearly and unmistakably" include language to the effect

its claims, the Court assumes the Plaintiff agrees that use of the word "may" does not make the provisions of the Disputes clause optional.

of "we agree to arbitrate arbitrability."  However, the Defendants argue that by invoking AAA rules in the Disputes clause, the parties "clearly and unmistakably" provided that questions about who is required to arbitrate and what issues must be arbitrated are questions for the arbitrator. Therefore, they assert, Morsey's argument that the arbitration clause contains an express limitation on the jurisdiction of the arbitrator-that the arbitrator shall not consider "claims for consequential damages or damages beyond the limitation of liability contained in this Agreement" or "any challenge to the limitation of liability contained in this Agreement"- should not be considered by the Court.

The Disputes clause provides: "Should the executives be unable to obtain a resolution within thirty (30) days after commencement of negotiation, either Party may then, by notice to the other, submit the dispute to the American Arbitration Association for resolution under its rules then in effect."  Although the Sixth Circuit has not ruled on this issue, district courts in this circuit and other circuit courts of appeal have held that when parties agree to settle claims related to a contract according to the rules of the AAA, "they provide a 'clear and unmistakable' delegation of scope-determining authority to an arbitrator" because the AAA rules "provide[] that 'the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the...scope...of the arbitration agreement.'"  *Bowden v. Delta T Corp.*, 2006 U.S. Dist. LEXIS 85724, at *20 (E.D. Ky. Nov. 27, 2006) (quoting *Sleeper Farms v. Agway, Inc.*, 211 F. Supp. 2d 197, 200 (D. Me. 2002) (quoting *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc.*, 203 F.R.D. 677, 685 (S.D. Fla. 2001)) (other internal citations omitted)); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (stating that when parties agree to arbitrate "in accordance with the Commercial

6

Arbitration Rules of the American Arbitration Association[,]" that agreement "serves as clear and unmistakeable [sic] evidence of the parties' intent to delegate" issues of scope and validity to the arbitrator.");[2] *Avue Techs. Corp. v. DCI Group, L.L.C.,* 2006 U.S. Dist. LEXIS 24513, at *14-22 (D.D.C. Apr. 28, 2006) (holding that when plaintiff signed a contract that explicitly incorporated AAA rules, it agreed to let the arbitrator decide the issue of which claims fell within the scope of the arbitration clause); *Book Depot P'ship v. Am. Book Co.*, 2005 U.S. Dist. LEXIS 33782, at *8-9 (E.D. Tenn. June 24, 2005) (noting that a "significant majority of courts" have held that incorporating arbitration rules into an arbitrations, such as those of the AAA, which themselves empower an arbitrator to decide issues of arbitrability, the incorporation serves the "clear and unmistakable" delegation, citing *Contec*, 398 F.3d at 208, and assuming the Sixth Circuit would "join in this emerging line of authority.").

Here, the parties clearly agreed to submit at least some of their disputes, if not all, to the AAA for binding arbitration ("...either Party may then, by notice to the other, submit the dispute to the American Arbitration Association for resolution under its rules then in effect...."). As noted above, multiple courts have held that agreeing to settle contract disputes according to the rules of the AAA provides a "'clear and unmistakable' delegation of scope-determining authority

---

[2]*See also P&P Indus., Inc. v. Sutter Cor*p., 179 F.3d 861, 867-68 (10th Cir. 1999) (party's consent to AAA arbitration equaled consent to be bound by AAA's procedural rules); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) (arbitration rules of the International Chamber of Commerce); *Citifinancial, Inc. v. Newton*, 359 F. Supp. 2d 545, 549-552 (S.D. Miss. 2005); *Bayer Cropscience, Inc. v. Limagrain Genetics Corp*., 2004 U.S. Dist. LEXIS 25070 (N.D. Ill., Dec. 9, 2004); *TES Franchising, LLC v. Loveman*, 2004 U.S. Dist. LEXIS 7101 (D. Conn. Apr. 20, 2004); *Johnson v. Polaris Sales, Inc*., 257 F. Supp. 2d 300, 308-09 (D. Me. 2003); *Prof'l Sports Tickets & Tours, Inc. v. Bridgeview Bank Group*, 2001 U.S. Dist. LEXIS 14402 (E.D. Pa. Sept. 13, 2001); *Lovell v. Harris Methodist Health Sys*., 2000 U.S. Dist. LEXIS 3082 (N.D. Tex. Mar. 10, 2000) (rules of private arbitration service); *Daiei, Inc. v. United States Shoe Corp*., 755 F. Supp. 299, 303 (D. Haw. 1991) (International Chamber of Commerce).

to an arbitrator." *Bowden*, 2006 U.S. Dist. LEXIS 85724, at *20.

The Disputes clause provides that should a dispute arise between BREI and Morsey "regarding any matter hereunder," the parties shall first refer the matter to senior executives; if the senior executives cannot resolve the dispute, either party has the authority to submit the dispute to the AAA for "finding and binding" resolution "without the right of appeal to the courts." The Disputes clause specifically provides that the AAA arbitrator shall not have jurisdiction to consider (i) claims for consequential damages or damages beyond the limitation of liability contained in the Agreement or (ii) any challenge to the limitation of liability contained in the Agreement.

"When faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration." *Simon*, 398 F.3d at 775. When the clause is so broad, "'only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.'" *Id.* (quoting *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004)). "However, when an arbitration clause by its terms extends only to a specific type of dispute, then a court cannot require arbitration on claims that are not included." *Id.* (citing *Bratt*, 338 F.3d at 613).

Morsey argues that the parties clearly intended to remove from an AAA arbitrator's consideration any claims against BREI for consequential damages or damages beyond the limitation of liability and any challenges to the limitation of liability and to instead allow those types of claims to be pursued in a forum other than arbitration, such as this Court. Morsey points to the fact that the subcontracts do not specifically provide that it cannot recover on those claims

8

in a forum other than arbitration.  In contrast, the Defendants argue that the sentence "In no event shall the arbitrator(s) have jurisdiction to consider (i) claims for consequential damages or damages beyond the limitation of liability contained in this Agreement or (ii) any challenge to the limitation of liability contained in this Agreement," means the parties intended that arbitration would be the only forum for their disputes, and that in that forum, neither party may seek remedies in excess of contract limits.

The Court agrees with the Defendants.  The Disputes clause expressly provides in the first sentence that it covers disputes between BREI and Morsey "regarding any matter hereunder."  The arbitration provision in the Disputes clause is broad, invoking a presumption in favor of arbitration.  *Simon*, 398 F.3d at 775.  Therefore, the Plaintiff must show either (1) that there is an express provision excluding from arbitration claims for consequential damages and claims for damages that go beyond the limitations of liability in the subcontracts or (2) "the most forceful evidence of a purpose to exclude" those claims from arbitration.  *Id.*  The Plaintiff has not shown either of these.

The first paragraph of Article XIV invokes arbitration by the AAA should the senior executives of the parties not be able to resolve a given dispute "regarding any matter hereunder." It does not provide that the courts shall have any role.  A meeting of the senior executives or arbitration by the AAA are the only methods of settling a dispute.  The first sentence of the second paragraph of Article XIV provides claims for consequential damages and claims for damages that go beyond the limitations of liability are not argument that may be presented to or considered by the arbitrator.  This sentence does not provide that these damages arguments may be instead considered by a court.  Instead, in light of Article XIV as a whole, the Court believes

9

the parties intended to state that those two types of claims could never be made under the subcontracts.

The second sentence of the second paragraph provides that the AAA arbitrator's decision shall be final and binding, with no right of appeal to the courts.  Rather than expressly providing that the parties may take certain issues to court, the Disputes clause actually contains an express provision excluding court involvement.  The Court agrees with the Defendant's statement that "Morsey has presented no evidence – let alone forceful evidence – that, when the parties agreed that no arbitrator hearing their disputes would be permitted to take up arguments for damages in excess of contractual limits, they really meant to direct such arguments to court."

Given all of this, the Court concludes that the parties intended to submit *all* disputes arising between BREI and Morsey to binding arbitration.  Further, agreeing to settle contract disputes according to the rules of the AAA provides a "'clear and unmistakable' delegation of scope-determining authority to an arbitrator."  *Bowden*, 2006 U.S. Dist. LEXIS 85724, at *20.

## 2.  Morsey's Claims Against UDS

The remaining issue is whether UDS, as a nonsignatory to the two subcontracts, can join with BREI and compel Morsey, who has filed suit against both BREI and UDS, to submit its claims against UDS to arbitration based on the Disputes clause contained in Article XIV of the subcontracts.  Two of the five counts in Morsey's complaint are lodged against both UDS and BREI: unjust enrichment (Count 4) and quantum meruit (Count 5).

As noted above, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Techs.*, 475 U.S. at 648 (internal quotation omitted).

10

"The Sixth Circuit has recognized five theories binding nonsignatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) equitable estoppel." *Eaves-Leanos v. Assurant, Inc*., 2008 U.S. Dist. LEXIS 32652, at *8 (W.D. Ky. Apr. 18, 2008) (citing *Javitch*, 315 F.3d at 629 (citing *Thomson-CSF v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995))).  The Defendants contend that UDS is entitled to enforce the Disputes clause and compel Morsey to arbitrate its claims against UDS under the theory of equitable estoppel.

"In *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999), the [Eleventh Circuit] explained the equitable estoppel theory as it applies to a nonsignatory to an arbitration agreement:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances.  First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory.  When each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of' the written agreement, the signatory's claims 'arise[] out of and relate[] directly to the [written] agreement,' and arbitration is appropriate.  Second, 'application of equitable estoppel is warranted...when the signatory [to the contract containing the arbitration clause] raises allegations of...substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.' Otherwise, 'the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.'"

*Id.* at *8-9 (citing *MS Dealer*, 177 F.3d at 947 (citations omitted); *accord Hagan v. Greenpoint Credit Corp*., 2007 U.S. Dist. LEXIS 56976, 2007 WL 2258866 at *8 (E.D.Ky Aug. 3, 2007); *Liedtke v. Frank*, 437 F.Supp.2d 696, 699 (N.D.Ohio 2006)).

Morsey's claims against UDS clearly meet the first circumstance set forth in *MS Dealer*. The claims against UDS certainly "rely on the terms of the written agreement," i.e., the two subcontracts.  *Id.* at *8. Morsey's two claims for unjust enrichment and quantum meruit exist

11

solely because UDS subcontracted work on the conversion-processing facility to BREI, who in turn subcontracted work on the facility to Morsey.  Morsey has no other relationship with UDS except through its subcontract with BREI.  Morsey would have no claim against UDS unless it had signed the two subcontracts with BREI and worked on the project.  As Morsey's claims meet *MS Dealer's* first prong, the Court need not consider the second prong.

Therefore, despite the fact that UDS was not a signatory to the two subcontracts, the doctrine of equitable estoppel forces Morsey to submit its claims against UDS to arbitration along with all of its claims against BREI.  As the Court found above, by agreeing to settle disputes arising under the subcontracts to the AAA for binding arbitration, the arbitrator shall have the authority to determine the scope of the arbitration clause.  *Bowden*, 2006 U.S. Dist. LEXIS 85724, at *20.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Compel Arbitration is **GRANTED**. This case is **DISMISSED**.